HOME SAVINGS BANK OF FREMONT, APPELLEE, v. A. C.
SHALLENBERGER, APPELLANT.

FILED JUNE 23, 1916. No. 19366.

Appeal: LAW OF THE CASE. When this court upon appeal determines
the law of the case, the trial court is bound thereby, and its judg-
ment accordingly will not under any ordinary conditions be dis-
turbed upon another appeal.

APPEAL from the district court for Harlan county:
HARRY S. DUNGAN, JUDGE. *Affirmed.*

*J. G. Thompson, Flansburg & Flansburg* and *John Ever-
son,* for appellant.

*John L. Rice, contra.*

SEDGWICK, J.

This is the third time this case has been before this
court. 82 Neb. 507; 95 Neb. 593. Twice the case was sub-
mitted to the jury, and the jury found in favor of the
defendant. Upon this last trial the court, supposing it
was following our former decision in this case, instructed
the jury to find for the plaintiff. The facts are sufficiently
stated in the former opinions. The defendant has com-
plicated the case somewhat by changing his position from
time to time. He has filed at least four different answers.

The defendant now insists in the brief that there was
sufficient evidence that Shelly-Rogers Company misrep-
resented matters to him when he signed the guaranty of
payment of the note, so that that question should have
been submitted to the jury. In the last of the former
opinions in this case it was said that "the charge of fraud
committed by the Shelly-Rogers Company was not sus-
tained and it is unnecessary to inquire what effect proof
of fraud on its part would have upon the rights of plain-
tiff." That is to say, Shelly-Rogers Company was offering
to sell this note to the plaintiff bank, and the bank would

not take the note unless this defendant would continue
to guarantee the payment.   Therefore Shelly-Rogers Com-
pany procured the defendant to guarantee the payment,
and the bank then took the note.   The opinion holds that
the guaranty is an absolute one, and that it goes with the
note, so that an innocent purchaser of the note would take
it with the guaranty, and would not be responsible for
the manner in which some prior owner of the note had
procured the defendant to guarantee the note.   This, by
the former opinions, has become the law of the case.   If
this case is ever going to be ended, it will have to be done
by the court, since the questions are questions of the law
of negotiable paper with which the jury is not supposed to
be familiar.   It is clear that this bank purchased this note
in the regular course of business, without notice of any
defense, and relying upon the guaranty of the defendant,
and under the law of the case as settled in our former de-
cision is entitled to recover.

The trial court followed our decision, and its judgment
is

AFFIRMED.

LETTON, J., concurring.

I concur for the reason that even if, as the amended
answer now pleads, defendant had been released as a
guarantor of a former note by its extension without his
consent, the additional extension of time granted to the
maker of this note by reason of the execution of this
guaranty is sufficient consideration to bind him, even
though a stranger to the instrument.

MORRISSEY, C. J., dissenting.

This is the third time this case has been before the
court.   The first opinion is found in 82 Neb. 507, and the
second in 95 Neb. 593.   In 1901 defendant was in the
banking business at Alma, Nebraska, and Shelly-Rogers
Company was in the live stock commission business at
South Omaha.   Cattle belonging to the Shelly-Rogers Com-

pany were sold to one W. P. Summers through the agency of defendant and another. Summers was then living at Lamar, Nebraska. Summers executed a note in the sum of $830, dated October 21, 1901, due June 6, 1902, in payment for the cattle, and also executed a chattel mortgage covering the cattle to secure the payment of the note. Defendant indorsed or guaranteed this note and delivered it to Shelly-Rogers Company. There was some profit or commission realized by defendant; the amount not being shown by the record.

The note was not paid at maturity, but a renewal note was taken June 6, 1902, falling due December, 1902. December 9, 1902, the original note and mortgage were surrendered and the mortgage released of record. December 16, 1902, Summers executed a renewal note and mortgage, which Shelly-Rogers Company sold to plaintiff, December 20, 1902, but with the promise, however, that they would procure the guaranty of defendant on said note. On the same day Shelly-Rogers Company wrote defendant, so he testifies, that Summers desired to make a renewal of the note which defendant had previously guaranteed; that they were willing to make the renewal provided he would sign the guaranty, which they inclosed, and which is set out at length in the former opinions. He also says they inclosed a slip giving a list of cattle covered by the mortgage which showed that the note was amply secured; that, relying on their statement, and believing that this was a renewal of the note dated October, 1901, on which he was liable as a guarantor, he signed the guaranty which is now in suit; that the note which he had guaranteed had been fully released and his liability thereon discharged in June, 1902; that the note taken in June, 1902, had also been renewed and the new note sold and delivered to plaintiff at the time they made these representations to him, but these facts were concealed, and he was induced to sign on the representation that the note which was being renewed was the one executed in October, 1901, and on which he was liable as indorser or guarantor; that he would not have

signed the guaranty had the truth not been concealed from him, and that there was no consideration for the guaranty which is in suit. On each of the other trials the jury found for defendant, but on the last trial the court directed a verdict for plaintiff, and defendant has appealed.

Appellee contends that all of the issues involved were determined by our former opinions in this case. The district court must have taken the same view; but appellant maintains that there were new issues raised by the amended answer, namely, that the signature to the guaranty was procured without consideration, by concealment of the true facts, and by falsely representing to him that he was guaranteeing the renewal of a note which he had once guaranteed, and on which he was then liable, and that his signature to this guaranty would work an extension or renewal of this old note, and that without this new guaranty this renewal would not be taken, while in truth and in fact the note which he had previously guaranteed had been surrendered, and his liability thereon had ceased; that this guaranty would not, and did not, procure the extension of time, or renewal of any note, but that this renewal had already been effected, that the new note had been given 14 days before, and had been sold and delivered to plaintiff 10 days before defendant executed the guaranty; and that "had defendant been advised of the actual state and condition of the said Summers note, he would have refused to sign said slip."

The correctness of the court's ruling depends on whether there was any question of fact, not previously determined, for the jury to determine from the evidence. The first opinion, so far as material here, reiterated the rule that "the extension of time of payment to a principal debtor is a sufficient consideration to support a new contract of guaranty made after the date of the renewal of such obligation, especially when the guarantor at the time of making such guaranty is still liable as guarantor for the payment of the debt renewed."

This was reiterated in the second opinion, and a number of other questions determined. The law laid down in these opinions is nowhere questioned on this appeal. On the last trial defendant by amended answer alleged, in substance, that this guaranty was procured by fraud. Defendant's testimony supports this allegation of the answer. It is true that there are many things in the record to raise an issue on this question. The answers filed on the former trials are incorporated in the bill of exceptions, the correspondence between the parties is shown, and excerpts from the briefs heretofore filed by appellant are set out in the brief of appellee. From these it is argued that defendant guaranteed the renewal note given by Summers in June, 1902, and was still liable thereon when he executed the guaranty in suit, in December of that year. This guaranty was mailed to defendant by Shelly-Rogers Company, but the letter accompanying it was not produced. Defendant testified that he did not guarantee the renewal note taken in June, 1902, and did not know that a new note was taken in June until the second trial of this case, and had no knowledge whatever that the note had been extended or that he had been released. There is testimony for the plaintiff showing that the defendant had guaranteed the note executed in June, and that his liability still existed. Indeed, there is a sharp conflict in the evidence on this question, and different minds may draw different conclusions therefrom. This is a question that has not been determined on either of the former trials, and is a material question of fact which ought to have been submitted to the jury.

The material questions presented were: (a) Had defendant already been released from liability on his original guaranty at the time he executed the guaranty in suit? and (b) was he induced to sign this guaranty by the false representations made by Shelly-Rogers Company at the time his signature was procured? On the record a verdict might be sustained for either party. Such being the case, it was error to instruct a verdict for the plaintiff. Defendant was entitled to have these questions submitted to the

jury. They did not fall within "the law of the case," because they were then presented for the first time.

HAMER, J.; dissenting.

As I understand it, the defense made in this case at the last trial in the district court had never been made before, and the district court was in no way bound either by the judgment of this court or by any rule of law or precedent. I think the judgment of the district court should be reversed, and I dissent from the majority opinion.